UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

THOMAS WARREN,
CDCR #P-60052,

Plaintiff,

vs.

C/O PARSONS, et al.,

Defendants.

Case No.: 3:20-cv-00405-JAH-JLB

**ORDER:**

**(1) DENYING PLAINTIFF'S MOTION TO APPOINT COUNSEL [ECF No. 14]**

**AND**

**(2) DISMISSING CIVIL ACTION FOR FAILING TO STATE A CLAIM PURSUANT TO 28 U.S.C. § 1915(e)(2)(B) AND 28 U.S.C. § 1915A(b)(1)**

Plaintiff Thomas Warren, incarcerated at Richard J. Donovan Correctional Facility ("RJD") in San Diego, California, is proceeding pro se and *in forma pauperis* ("IFP"), in this civil rights action pursuant to 42 U.S.C. § 1983.

**I.     Procedural History**

In his original Complaint, Warren claimed RJD Correctional Officers P. Parsons and John Doe #1, Sgt. C. Godinez, Correctional Counselors E. Aukerman and L. Garnica, Warden D. Paramo, Associate Warden J. Juarez, and an unidentified John/Jane Doe

1

inmate appeals official violated his Fourth, Fifth, Eighth, and Fourteenth Amendment rights when they searched his cell on March 5, 2018, left it in disarray, confiscated his personal property, and thereafter conspired to coverup the wrongdoing by denying his inmate appeals. *See* Compl., ECF No. 1 at 2-14.

On July 6, 2020, the Court granted Warren leave to proceed IFP, but simultaneously screened and dismissed his Complaint *sua sponte* for failing to state a claim upon which § 1983 relief can be granted pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii) and § 1915A(b)(1). *See* ECF No. 7. Specifically, the Court dismissed Warren's Fourth Amendment claims because he "has no expectation of privacy in his prison cell," *see id.* at 6 (citing *Hudson v. Palmer,* 468 U.S. 517, 525-26 (1984)), his Fifth Amendment due process claims because he alleged violations by state, and not federal actors, *id.* at 7 n.3 (citing *Castillo v. McFadden*, 370 F.3d 882, 889 n.5 (9th Cir. 2004)), his Eighth Amendment claims because he failed to allege any facts sufficient to show the confiscation of his personal property deprived him of "the minimal civilized measure of life's necessities," *id.* at 6 (citing *Rhodes v. Chapman*, 452 U.S. 337, 347 (1981), his Fourteenth Amendment claims because California provides an adequate post-deprivation remedy for negligent or intentional deprivations of personal property sufficient to satisfy due process, *id.* at 7–8 (citing *Barnett v. Centoni*, 31 F.3d 813, 816–17 (9th Cir. 1994)), his conspiracy claims because he failed to allege any of the Defendants entered into any express or implied agreement to violate his constitutional rights, *id.* at 8 (citing *Avalos v. Baca*, 596 F.3d 583, 592 (9th Cir. 2010)), and his claims against RJD's inmate appeals officials because the denial of an administrative grievance, without more, cannot serve as a basis for § 1983 liability. *Id.* at 8–9 (citing *Ramirez v. Galaza,* 334 F.3d 850, 860 (9th Cir. 2003)). The Court also granted Warren leave to file an Amended Complaint, advised his failure to include any Defendant or claim would constitute waiver, and warned that if he failed to fix his pleading deficiencies, the case would be dismissed in its entirety. *See id.* at 10 (citing *Lacey v. Maricopa Cnty*, 693 F.3d 896, 928 (9th Cir. 2012); *Lira v. Herrera*, 427 F.3d 1164, 1169 (9th Cir. 2005)).

Warren has since filed a First Amended Complaint ("FAC"), which re-names Defendants Paramo, Parsons, and Juarez, omits Defendants John Doe #1, Godinez, Aukerman, Garnica, and John/Jane Doe, and adds the California Department of Corrections and Rehabilitation ("CDCR"), former CDCR Secretary M. Cate, CDCR Director of Adult Institutions C. Gipson, RJD Captain E. Garza, RJD Sgts. D. Hampton and Vanderwered, and Does 1-25 as Defendants. *See* FAC, ECF No. 12 at 1, 6–9.

Warren's Amended Complaint contains even fewer factual allegations than his original Complaint, but he continues to claim Defendants, "each and every one, act[ed] under color of state law to depriv[e] him" of his personal and intellectual property in violation of the First and Fourteenth Amendments.[1] *See* FAC at 11–14. The primary focus of his Amended Complaint, however, centers on state law causes of action including allegations of criminal theft, fraud, embezzlement, and conversion. *Id.* at 17–19, 23–28. Warren also asserts multiple violations of intentional infliction of emotional distress and breaches of contract, fiduciary duty, and the covenant of good faith and fair dealing under state tort law. *Id.* at 19–23. He seeks $1,098,748 in both compensatory and punitive damages. *Id.* at 32. Warren has also filed a Motion to Appoint Counsel. *See* ECF No. 14.

## II. Motion to Appoint Counsel

Warren first seeks the appointment of counsel pursuant to Cal. Penal Code § 2601(d) and *Smith v. Ogbuehi*, 38 Cal. App. 5th 453 (2019), *reh'g denied* (Aug. 28,

---

[1] While Plaintiff's FAC supersedes his original pleading, *see Hal Roach Studios, Inc. v. Richard Feiner & Co., Inc.*, 896 F.2d 1542, 1546 (9th Cir. 1989), he explicitly incorporates by reference several exhibits he submitted in support of his original Complaint in the body of his FAC. *See e.g.,* FAC at 15–16; *see also* "Plaintiff's Request for Judicial Notice of Exhibits," filed as Exhibits in Support of Complaint, ECF No. 4. The Court "must consider the complaint in its entirety," including "documents incorporated into the complaint by reference" to be part of the pleading when determining whether the plaintiff has stated a claim upon which relief may be granted. *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007); *Schneider v. Cal. Dep't of Corrs.*, 151 F.3d 1194, 1197 n.1 (9th Cir. 1998); *see also* Fed. R. Civ. P. 10(c) ("A copy of a written instrument that is an exhibit to a pleading is a part of the pleading for all purposes.").

2019) (Cal. Ct. App. 5th Dist. 2019). *See* ECF No. 14 at 1–4.

*Smith* is a non-binding California Court of Appeal decision, however, that discusses the state court's discretion to appoint counsel to a civil litigant in California court proceedings. *See Smith*, 38 Cal. App. 5th at 468–69. And while it requires California courts to consider similar factors, even *Smith* notes that the appointment of counsel in a federal civil action is governed by 28 U.S.C. § 1915. *Id.* at 469–470 ("It follows that the relevant circumstances include, without limitation, the factors listed in the federal decisions for determining whether exceptional circumstances exist in a particular case.") (citing *Terrell v. Brewer*, 935 F.2d 1015, 1017 (9th Cir. 1991)).

"[T]here is 'no constitutional right to counsel in a civil case.'" *Adir Int'l, LLC v. Starr Indem. & Liab. Co.*, 994 F.3d 1032, 1038–39 (9th Cir. 2021) (quoting *United States v. 30.64 Acres of Land, More or Less, Situated in Klickitat Cty., Washington*, 795 F.2d 796, 801 (9th Cir. 1986) (cleaned up)). "Unlike in criminal cases that implicate the Sixth Amendment right to counsel, civil litigants who cannot afford counsel are not constitutionally guaranteed the appointment of a lawyer." *Id.* Instead, Title 28, section 1915(d) provides that "[t]he court may request an attorney to represent any person unable to afford counsel." 28 U.S.C. § 1915(e)(1).

While Warren has been granted leave to proceed IFP pursuant to 28 U.S.C. § 1915(a), and is proceeding pro se, none of the facts alleged in either his original Complaint or his FAC suggest that this is a case that demands the Court to exercise its limited discretion to request an attorney to represent him pro bono pursuant to 28 U.S.C. § 1915(e)(1). *See Lassiter v. Dept. of Social Servs.*, 452 U.S. 18, 25 (1981); *Agyeman v. Corr. Corp. of America*, 390 F.3d 1101, 1103 (9th Cir. 2004). Only "exceptional circumstances" support such a discretionary appointment. *Terrell*, 935 F.3d at 1017; *Palmer v. Valdez*, 560 F.3d 965, 970 (9th Cir. 2009). Exceptional circumstances exist where there is cumulative showing of both a likelihood of success on the merits and a demonstrated inability of the pro se litigant to articulate his claims in light of their legal complexity. *Id.*

As currently pleaded, Warren's FAC demonstrates that while he may not be formally trained in law, he nevertheless is capable of legibly articulating the facts and circumstances relevant to his claims, which are typical and not legally "complex." *Agyeman*, 390 F.3d at 1103. Moreover, for the reasons explained below, Warren has not shown he is likely to succeed on the merits. Therefore, the Court **DENIES** his Motion for Appointment of Counsel (ECF No. 14).

## III. Screening of Amended Complaint per to 28 U.S.C. §§ 1915(e)(2) and 1915A(b)

As Warren now knows, the Prison Litigation Reform Act ("PLRA") requires the Court to review complaints filed by all persons proceeding IFP and by those, like him, who are "incarcerated or detained in any facility [and] accused of, sentenced for, or adjudicated delinquent for, violations of criminal law or the terms or conditions of parole, probation, pretrial release, or diversionary program," at the time of filing "as soon as practicable after docketing." *See* 28 U.S.C. §§ 1915(e)(2) and 1915A(b). Under these statutes, the Court must *sua sponte* dismiss complaints, or any portions thereof, which are frivolous, malicious, fail to state a claim, or which seek damages from defendants who are immune. *See* 28 U.S.C. §§ 1915(e)(2)(B) and 1915A; *Lopez v. Smith*, 203 F.3d 112, 1126-27 (9th Cir. 2000) (en banc) (citing § 1915(e)(2)); *Rhodes v. Robinson*, 621 F.3d 1002, 1004 (9th Cir. 2010) (discussing 28 U.S.C. § 1915A(b)).

### A. Standard of Review

"The purpose of § 1915A is 'to ensure that the targets of frivolous or malicious suits need not bear the expense of responding.'" *Nordstrom v. Ryan*, 762 F.3d 903, 920 n.1 (9th Cir. 2014) (citation omitted)). "The standard for determining whether a plaintiff has failed to state a claim upon which relief can be granted under § 1915(e)(2)(B)(ii) is the same as the Federal Rule of Civil Procedure 12(b)(6) standard for failure to state a claim." *Watison v. Carter*, 668 F.3d 1108, 1112 (9th Cir. 2012); *accord Wilhelm v. Rotman*, 680 F.3d 1113, 1121 (9th Cir. 2012) (noting that screening pursuant to § 1915A "incorporates the familiar standard applied in the context of failure to state a claim under Federal Rule of Civil Procedure 12(b)(6)").

Every complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Detailed factual allegations are not required, but "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). "When there are well-pleaded factual allegations, a court should assume their veracity, and then determine whether they plausibly give rise to an entitlement to relief." *Id.* at 679. "Determining whether a complaint states a plausible claim for relief [is] ... a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* The "mere possibility of misconduct" falls short of meeting this plausibility standard. *Id.*; *see also Moss v. U.S. Secret Service*, 572 F.3d 962, 969 (9th Cir. 2009).

While a plaintiff's factual allegations are taken as true, courts "are not required to indulge unwarranted inferences." *Doe I v. Wal-Mart Stores, Inc.*, 572 F.3d 677, 681 (9th Cir. 2009) (internal quotation marks and citation omitted). Indeed, while courts "have an obligation where the petitioner is pro se, particularly in civil rights cases, to construe the pleadings liberally and to afford the petitioner the benefit of any doubt," *Hebbe v. Pliler*, 627 F.3d 338, 342 & n.7 (9th Cir. 2010) (citing *Bretz v. Kelman*, 773 F.2d 1026, 1027 n.1 (9th Cir. 1985)), it may not "supply essential elements of claims that were not initially pled." *Ivey v. Board of Regents of the University of Alaska*, 673 F.2d 266, 268 (9th Cir. 1982). Even before *Iqbal*, "[v]ague and conclusory allegations of official participation in civil rights violations" were not "sufficient to withstand a motion to dismiss." *Id.*

## B.    Factual Allegations

As noted above, Warren includes few specific factual allegations in his FAC and instead incorporates by reference several exhibits he submitted in support of his original Complaint. *See* ECF No. 4. In the body of his FAC, Warren claims only generally that "on or about March 5, 2018," "[a]ll Defendant(s) acting under color of state law directly or indirectly caused the deprivation of [his] rights to Free Speech, right to publish, and

6

right to Due Process … by removing, taking, confiscating, or allowing to be confiscated [his] personal, intellectual property, [and] 'chattel.'" *See* FAC at 11. Warren claims his property, which consisted of authorized inmate "manuscripts" containing "expression of his hopes, dreams, views, experiences and desires," was improperly designated as contraband and "stolen" from him. *Id.* at 13–16.

### C.  42 U.S.C. § 1983

Title 42 U.S.C. § 1983 provides a cause of action for the "deprivation of any rights, privileges, or immunities secured by the Constitution and laws" of the United States. *Wyatt v. Cole*, 504 U.S. 158, 161 (1992). To state a claim under § 1983, a plaintiff must allege two essential elements: (1) that a right secured by the Constitution or laws of the United States was violated, and (2) that the alleged violation was committed by a person acting under color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988); *Long v. Cty. of Los Angeles*, 442 F.3d 1178, 1185 (9th Cir. 2006).

### D.  Discussion

As noted above, Warren's FAC asserts two federal causes of action and multiple state law tort and criminal law violations. But because he still fails to allege a plausible claim for relief under either the First or Fourteenth Amendments, his FAC, like his original Complaint, must be dismissed *sua sponte* pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii) and § 1915A(b)(1). *See Lopez,* 203 F.3d at 1126–27; *Wilhelm,* 680 F.3d at 1121.

And although the Court may exercise supplemental jurisdiction over Warren's multiple purported state law claims, it declines to do so in light of its "dismiss[al] [of] all claims over which it has original jurisdiction." 28 U.S.C. § 1367(c)(3); *Sanford v. Member Works, Inc*., 625 F.3d 550, 561 (9th Cir. 2010) ("[I]n the usual case in which all federal-law claims are eliminated before trial, the balance of factors to be considered under the pendent jurisdiction doctrine . . . will point toward declining to exercise jurisdiction over the remaining state-law claims.").

///

### 1. Individual Liability

As a preliminary and overarching matter, the Court first finds that Warren's FAC fails to allege facts sufficient to plausibly show that "each Government-official" he now names as a Defendant "through the official's own individual actions, has violated the Constitution." *Iqbal*, 556 U.S. at 676.

In his original Complaint, Warren identified Officer Parsons and Doe #1 (who is no longer named as a Defendant) as the persons who searched his cell on March 5, 2018. *See* Compl. at 5–6. In the caption of his FAC, Warren now names the CDCR,[2] (former) CDCR Secretary Cate, C. Gipson, Warden Paramo, Associate Warden Juarez, Captain E. Garza, Sgts. D. Hampton and Vanderwered, Parsons, and Does 1-25 as Defendants. *See* FAC at 1. But in the body of his pleading, he simply describes each Defendant's title, alleges all were "employed by Defendant CDCR," *id.* at 8–9, and contends Defendants *as a group* are all "liable in some manner," that "[a]ny adherence" to the "separate existence of the Defendants" is a "fiction," and therefore "any individualty [sic] and separateness between [them] cease[s]." *Id.* at 9, 10.

This pleading strategy does not suffice to establish individual liability in a civil rights action, however. In a § 1983 suit, "each Government official, his or her title notwithstanding, is only liable for his or her own misconduct." *Iqbal*, 556 U.S. at 677. Section 1983 provides a cause of action resulting from violations of constitutional or other federal rights by persons alleged to have acted under color of state law. *West*, 487

---

[2] The CDCR, of course, is an agency of the State of California, and not a "person" subject to a damages suit under 42 U.S.C. § 1983 at all. *See Seminole Tribe of Fla. v. Florida,* 517 U.S. 44, 53-54 (1996); *Groten v. California,* 251 F.3d 844, 851 (9th Cir. 2001) *(citing Hale v. Arizona,* 993 F.2d 1387, 1398-99 (9th Cir. 1993)); *see also Dragasits v. California,* No. 3:16-cv-01998-BEN-JLB, 2016 WL 6804947, at *3 (S.D. Cal. Nov. 15, 2016) ("The State of California's Department of Corrections and Rehabilitation and any state prison, correctional agency, sub-division, or department under its jurisdiction, are not 'persons' subject to suit under § 1983." *(citing Groten,* 251 F.3d at 851)). *See also Will v. Michigan Dep't of State Police*, 491 U.S. 58, 66 (1989) ("Section 1983 provides a federal forum to remedy many deprivations of civil liberties, but it does not provide a federal forum for litigants who seek a remedy against a State for alleged deprivations of civil liberties."); *Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 100 (1984) (holding that Eleventh Amendment immunity extends to state agencies).

U.S. at 48; *Long*, 442 F.3d at 1185. In the Court's previous screening Order, Warren was advised that for each Defendant named, he must allege facts to plausibly show a causal link between the violation of his rights and an act or omission by that individual person. *See* ECF No. 7 at 4 (citing *Iqbal*, 556 U.S. at 678–79; *Starr v. Baca*, 652 F.3d 1202, 1205–06 (9th Cir. 2011)). But in his FAC, Warren rejects the Court's prior warning, makes no effort to separate the parties, delineate each person's actions, or explain the role each individual Defendant played in causing a violation of his constitutional rights. *See Blankenhorn v. City of Orange,* 485 F.3d 463, 481 n.12 (9th Cir. 2007) (an individual's liability under § 1983 "is predicated on his 'integral participation' in the alleged violation.") *(quoting Chuman v. Wright,* 76 F.3d 292, 294–95 (9th Cir. 1996)). "A plaintiff must allege facts, not simply conclusions, t[o] show that [each defendant] was personally involved in the deprivation of his civil rights." *Barren v. Harrington*, 152 F.3d 1193, 1194 (9th Cir. 1998); *see also Estate of Brooks ex rel. Brooks v. United States*, 197 F.3d 1245, 1248 (9th Cir. 1999) ("Causation is, of course, a required element of a § 1983 claim."). "[V]icarious liability is inapplicable to … § 1983 suits." *Iqbal*, 556 U.S. at 676.

For this reason alone, the Court finds Warren's FAC fails to state a plausible claim for relief as to any Defendant and is subject to *sua sponte* dismissal in its entirety pursuant to 28 U.S.C. § 1915(e)(2) and § 1915A(b).

### 2.    First Amendment Claims

Warren contends the confiscation of his property violated his First Amendment rights because it was comprised of "manuscripts" and personal "chattel" which he claims is not the type of contraband prohibited by Cal. Code Regs., tit. 15 § 3006.[3] *See* FAC at

---

[3] Section § 3006 of the California Code of Regulations provides that "[i]nmates may possess only the personal property, materials, supplies, items, commodities and substances, *up to the maximum amount*, received or obtained from authorized sources," and identifies more than 20 specific types of property, ranging from weapons and explosives to money, tobacco, and wireless communication devices as prohibited. *See* Cal. Code Regs. tit. 15, § 3006 (emphasis added); *id.* § 3006(a), (b), (c)(1)–(21). "Possession of contraband as defined in section 3000 may result in disciplinary action and confiscation of the contraband." *Id.* § 3006. "Contraband means anything which is not permitted, in excess of the

12, 14. However, even if he had alleged facts sufficient to establish personal liability on the part of any of the named Defendants, the Court finds his FAC further fails to state any plausible entitlement to relief under the First Amendment. *Iqbal*, 556 U.S. at 678.

"There is no iron curtain drawn between the Constitution and the prisons of this country." *Wolff v. McDonnell*, 418 U.S. 539, 555–56 (1974). But "constitutional rights that prisoners possess are more limited in scope than the constitutional rights held by individuals in society at large." *Shaw v. Murphy*, 532 U.S. 223, 229 (2001). "[A] prison inmate retains those First Amendment rights that are not inconsistent with his status as a prisoner or with the legitimate penological objectives of the corrections system." *Pell v. Procunier*, 417 U.S. 817, 822 (1974); *see also Jones v. Williams*, 791 F.3d 1023, 1035 (9th Cir. 2015); *Clement v. Cal. Dep't. of Corr.*, 364 F.3d 1148, 1151 (9th Cir. 2004) (per curiam); *Ashker v. Cal. Dep't of Corr.*, 350 F.3d 917, 922 (9th Cir. 2003); *Rizzo v. Dawson*, 778 F.2d 527, 532 (9th Cir. 1985). To state a claim, Warren must allege both that "the type of activity he engaged in was protected under the [F]irst [A]mendment and that the state impermissibly infringed on his right to engage in the protected activity." *Rizzo*, 778 F.2d at 531.

Here, Warren contends Defendants violated the First Amendment by confiscating "manuscripts," and "st[ealing] [his] ability to publish his works" which were "an expression of his hopes, dreams, views, experiences and desires" pursuant to prison regulations defining excess property as contraband. *See* FAC at 14. Liberally construed, the Court finds these facts sufficient to plausibly suggest the seizure and confiscation of Warren's personal writings implicate his First Amendment rights to free speech. *See Hawthorne v. Kernan*, No. 17-CV-04960-HSG, 2020 WL 6891819, at *4 (N.D. Cal. Nov. 24, 2020) (finding prisoner's claims of having been prevented from "reading what he

///

---

maximum quantity permitted, or received or obtained from an unauthorized source." Cal. Code Regs. tit. 15, § 3000.

will, when he will" and "writing to whom he will, when he will" due to cell search and confiscation of his books and magazines as sufficient to invoke First Amendment protections).

However, Warren does *not* allege Defendants confiscated his books or personal manuscripts based on their content or in retaliation for his having engaged in any protected activity. *See e.g., Lewis v. Casey,* 518 U.S. 343, 349-53 (1996) (setting forth elements of an access-to-courts claim and actual injury requirement); *Nordstrom v. Ryan,* 856 F.3d 1265, 1271 (9th Cir. 2017) (discussing a prisoner's First Amendment right to send and receive mail); *Rhodes v. Robinson,* 408 F.3d 559, 567-68 (9th Cir. 2005) (setting out elements of a retaliation claim in the prison context). *See also Hebbe*, 627 F.3d at 341–42 (noting that although pro se pleadings are construed liberally, a plaintiff must present factual allegations sufficient to state a plausible claim for relief).

Instead, Warren challenges the legitimacy of "the CDCR's own policies, rules, and regulations" *as applied* to his manuscripts, *see Hargis v. Foster,* 312 F.3d 404, 410 (9th Cir. 2002), and contends that the "theft" violated both his First Amendment rights and California Penal Code. *See* FAC at 12.[4] But prison regulations that impinge on First

---

[4] To the extent Warren alleges Defendants "are criminal in act as well as thought," and committed acts of theft, embezzlement, conversion, and fraud in violation of the California Penal Code and Title 15 of the California Code of Regulations throughout his FAC, *see, e.g.,* FAC at 13–28, he fails to state a claim upon which § 1983 relief can be granted. *See* 28 U.S.C. § 1915(e)(2)(B)(ii); § 1915A(b)(1). Criminal statutes do not give rise to civil liability. *Aldabe v. Aldabe*, 616 F.2d 1089, 1092 (9th Cir. 1980). A plaintiff has no right to have another person criminally prosecuted. *See Linda R.S. v. Richard D.*, 410 U.S. 614, 619 (1973) ("[A] private citizen lacks a judicially cognizable interest in the prosecution or non-prosecution of another."); *Johnson v. Craft*, 673 F. Supp. 191, 193 (D. Miss. 1987) ("The decision to prosecute a particular crime is within the authority of the state, and there appears to be no federal constitutional right to have criminal wrongdoers brought to justice."). Further, the mere violation of a prison regulation, which may provide even more procedural protections than mandated by the Constitution, does not give rise to a cognizable claim for relief. *See, e.g., Nible v. Fink*, 828 Fed.Appx. 463 (9th Cir. 2020) (violations of Title 15 of the California Code of Regulations do not create private right of action); *Nurre v. Whitehead*, 580 F.3d 1087, 1092 (9th Cir. 2009) (claims under § 1983 must be premised on violation of federal constitutional right); *Prock v. Warden*, No. 1:13-cv-01572-MJS (PC), 2013 WL 5553349, at *11-12 (E.D. Cal. Oct. 8, 2013) (noting that several district courts have found no implied private right of action under title 15 and stating that "no § 1983 claim arises for [violations of title 15] even if they occurred.").

Amendment rights are "valid if ... related to legitimate penological interests." *Turner v. Safley*, 482 U.S. 78, 89 (1987); *see also Beard v. Banks,* 548 U.S. 521, 528 (2006); *Overton v. Bazzetta*, 539 U.S. 126, 132 (2003); *Shaw v. Murphy*, 532 U.S. 223, 229 (2001); *Lewis*, 518 U.S. at 361; *Prison Legal News v. Lehman*, 397 F.3d 692, 699 (9th Cir. 2005); *Ashker*, 350 F.3d at 922; *Morrison v. Hall*, 261 F.3d 896, 901 (9th Cir. 2001); *Mauro v. Arpaio*, 188 F.3d 1054, 1058 (9th Cir. 1999) (en banc). Simply because prisoners retain certain rights does not mean that their rights are not subject to restrictions and limitations. *Bell v. Wolfish*, 441 U.S. 520, 545 (1979). Lawful incarceration brings with it the withdrawal or limitation of many privileges and rights that are justified by considerations of the penal system. *Id.* at 546. Thus, "[t]here must be a "mutual accommodation between institutional needs and objectives and the provisions of the Constitution that are of general application." *Id.* (quoting *Wolff*, 418 U.S. at 566).

In California, "[i]nmates shall be permitted to possess in their quarters/living area, state-issued property items, and authorized personal/religious property items" depending on their assigned security level, and/or an institutional mission. *See* Cal. Code Regs. tit. 15 § 3190(a). With some exceptions Warren does not contend apply here, however, "[t]he combined volume of state-issued and allowable personal property items shall not exceed six cubic feet." *Id.* § 3190(e). "Contraband" is defined as "anything which is not permitted, *in excess of the maximum quantity permitted*, or received or obtained from an unauthorized source." Cal. Code Regs. tit. 15, § 3000 (emphasis added).

In fact, Warren offers few specifics as to the circumstances under which his cell was searched on March 5, 2018, how his property came to confiscated, or why he believes its loss violates the First Amendment. At most, Warren incorporates by reference Exhibit A, which is comprised of his CDCR 602 Inmate/Parolee Appeal No. RJD-E-18-2084, dated March 20, 2018, in which he challenged the March 5, 2018 search and seizure of his property, as well as the First and Second Level Appeal Responses dated April 10, 2018, and June 25, 2018, respectively. *See* FAC at 15; ECF No. 4 at 4–28. This inmate appeal record shows Officer Parsons conducted a search of Warren's cell on

March 5, 2018 as part of an "institutional wide" search.[5] *See* ECF No. 4 at 8. Afterward, Warren was issued a cell receipt[6] that notes the overall condition of his cell as "poor" and reports that "excess books" were found in his bunk area and confiscated as contraband. *Id.* at 8, 19. Warren was appointed a staff assistant for an appeal interview conducted on April 10, 2018, and "given the opportunity to provide additional information and to clarify" his claim of not having been given an opportunity to arrange for the disposal of his property pursuant to Cal. Code Regs., tit. 15 § 3191(c).[7] However, Associate Warden Juarez determined Officer Parsons "did give [Warren] the option at the time of the search to send home the confiscated items and excess books [per] CCR 3191(c)," but Warren "refused to cooperate and complete the process." *Id.* at 9. Because Warren "provided no new evidence, documentation, or information" to support his claims, his appeal was denied. *Id.* at 8–9.

Nothing in either Warren's FAC or his exhibits plausibly suggests the March 5, 2018 cell search or confiscation of his "excess books" pursuant to Cal. Code Regs., tit. 15 § 3190 was not "reasonably related to legitimate penological interests." *Turner*, 482 U.S.

---

[5] "Occupied cells, rooms and dormitory areas, including fixtures and lockers, and any personal and state-issued property of the occupant will be inspected on an infrequent and unscheduled basis." Cal. Code Regs. tit. 15, § 3287(a)(1). "Cell and property inspections are necessary in order to detect and control serious contraband and to maintain institution security. Such inspections will not be used as a punitive measure nor to harass an inmate. Every reasonable precaution will be taken to avoid damage to personal property and to leave the inmate's quarters and property in good order upon completion of the inspection." *Id.* § 3287(a)(2). To the extent Warren's original Complaint also sought to challenge the reasonableness of the March 5, 2018 search on Fourth Amendment grounds, the Court found he failed to state a claim. *See* ECF No. 7 at 5 (citing *Hudson*, 468 U.S. at 525-26) ("The Fourth Amendment prescription against unreasonable searches does not apply to the confines of the prison cell.").

[6] "The inmate will be given a written notice for any item(s) of personal and authorized state-issued property removed from his or her quarters during an inspection and the disposition made of such property. The notice will also list any contraband picked up or any breach of security noted during the inspection, and the follow-up action intended by the inspecting officer." 15 Cal. Code Regs., tit. 15 § 3287(a)(4).

[7] If a California's inmate's personal property does not "meet[] the criteria in section 3190," he must "select one of the methods listed in sections 3191(c)(1) through 3191(c)(5) for its disposal. *See* Cal. Code Regs. tit. 15, § 3191(c). "If the inmate makes no selection or has insufficient funds, staff shall document that fact and determine the method of disposition." *Id.*

at 89. "Implicit in the regulation of inmate property is the authority to define what an inmate can and cannot possess." *Nevada Dep't of Corr. v. Greene*, 648 F.3d 1014, 1019 (9th Cir. 2011). "[C]orrectional officials must be permitted to devise reasonable search policies to detect and deter the possession of contraband in their facilities." *Florence v. Bd. of Chosen Freeholders of Cty. of Burlington*, 566 U.S. 318, 328 (2012) (citing *Wolfish*, 441 U.S. at 546 ("[M]aintaining institutional security and preserving internal order and discipline are essential goals that may require limitation or retraction of retained constitutional rights of both convicted prisoners and pretrial detainees.").

The task of determining whether a policy is reasonably related to legitimate security interests is "peculiarly within the province and professional expertise of corrections officials." *Wolfish*, 441 U.S. at 548. Thus, without more, "[p]rison restrictions on the size [or amount] of personal property that an inmate may possess," do not impermissibly infringe on an inmate's First Amendment rights. *See Rizzo*, 778 F.2d at 531; *see also Hawthorne*, 2020 WL 6891819, at *8 ("[T]he failure to follow proper prison procedures when confiscating or storing property does not, by itself, state a cognizable First Amendment claim for freedom of speech."); *Daniels v. Cleaver*, No. 2:18-CV-00285-MC, 2020 WL 2044621, at *7 (D. Or. Apr. 27, 2020) (rejecting prisoner's First Amendment claims on qualified immunity grounds because "[n]o reasonable correctional officer in [Defendants'] positions would have known that reducing an inmate's excess property and confiscating unauthorized items would violate an inmate's First Amendment rights."); *cf. Velasquez v. Ahlin*, No. 1:18-CV-00053-LJO-SAB PC, 2018 WL 1959541, at *10–12 (E.D. Cal. Apr. 25, 2018) (finding civil detainee's "freedom of speech and freedom of expression" challenge to confiscation and property restrictions failed to state a First Amendment claim because in-custody regulations did not prohibit "lawful communication or speech … by other means," and limits governing storage capacity were not "excessive in relation to the regulation[']s purpose."); *see also Tarpley v. Allen Cty., Indiana*, 312 F.3d 895, 898 (7th Cir. 2002) (finding jail policy limiting volume of in-cell religious reading materials was "reasonably

related to the general interest in maintaining safe conditions and in preventing later disputes over lost or damaged items," and noting "[t]hese are well-established legitimate government concerns.").

### 3. Fourteenth Amendment Due Process Claims

Warren also continues to claim Defendants intentionally, "wrongful[ly]," "deliberate[ly]," "decept[ively]," and "wanton[ly]" searched his cell on March 5, 2018 and "commit[ted] theft of [his] property" in violation of the Fourteenth Amendment. *See* FAC at 12–15. But his FAC still fails to state a plausible due process claim for relief against any Defendant with respect to the loss of his property.

Generally, the "requirements of procedural due process apply only to the deprivation of interests encompassed by the Fourteenth Amendment's protection of liberty and property." *Burnsworth v. Gunderson*, 179 F.3d 771, 774 (9th Cir. 1999). The "Due Process Clause is simply not implicated by a negligent act of an official causing unintended loss of or injury to life, liberty, or property." *Daniels v. Williams*, 474 U.S. 327, 328 (1986). In addition, "unauthorized intentional deprivation[s] of *property* by a state employee do[] not constitute a violation of the procedural requirements of the Due Process Clause of the Fourteenth Amendment if a meaningful post-deprivation remedy for the loss is available." *Hudson*, 468 U.S. at 533 (emphasis added). Thus, to the extent Warren claims Defendants committed "wrongful acts of theft and deliberate deception" with respect to his personal property, *see* FAC at 12, the Due Process Clause is not implicated unless no "meaningful post-deprivation remedy for the loss is [made] available" by the State. *Hudson*, 468 U.S. at 533; *Parratt v. Taylor*, 451 U.S. 527 (1981), *overruled in part by Daniels*, 474 U.S. at 330-31.

But as this Court noted in its July 6, 2020 Order, California law provides such a remedy. *See Barnett*, 31 F.3d at 816–17 ("[A] negligent or intentional deprivation of a prisoner's property fails to state a claim under section 1983 if the state has an adequate post deprivation remedy. California Law provides an adequate post-deprivation remedy for any property deprivations.") (citations omitted); *see also Teahan v. Wilhelm*, 481 F.

Supp. 2d 1115, 1120 (S.D. Cal. 2007) (dismissing prisoner's due process claim regarding cell search, seizure and destruction of television pursuant to *Hudson* and *Barnett*); *Hawthorne*, 2020 WL 6891819, at *2 (finding no due process violation with respect to confiscation of California prisoner's "hygiene products, reading materials, and legal materials"); *Kemp v. Skolnik*, No. 2:09-CV-02002-PMP, 2012 WL 366946, at *6 (D. Nev. Feb. 3, 2012) (finding prisoner's alleged loss or destruction of newspaper, magazines, and books failed to state a Fourteenth Amendment claim pursuant to *Hudson* and noting that "[i]f Plaintiff wishes to recoup the value of the alleged lost materials, he will have to file a claim in small claims court in state court.").

In fact, Defendants Juarez and Paramo advised Warren of his right to "submit a claim directly with the California Victims Compensation and Government Claims Board (formerly known as the State Board of Control), Government Claims Unit" when they denied his CDCR Inmate/Parolee Appeal Log No. RJD-E-18-02084 at both the first and second levels of review. *See* ECF No. 4, Ex. A at 9, 14, 27–28. Warren admits he "continu[ed] [to] … ma[ke] demand[s] on CDCR" and challenged the loss of his property through California's Government Claims Unit. *See* FAC at 26. His tort claim was also rejected. *See* ECF No. 4, Ex. C at 31–33 (Cal. Dept. of General Services July 26, 2018 Letter rejecting California Government Claims Program Claim No. 18006359).[8]

To the extent Warren also now alleges Defendants "violated his rights, based on a state[-]created *liberty* interest" with respect to the possession of his "personal, intellectual property, [or] chattel," *see* FAC at 11 (emphasis added), he also fails to state a plausible

---

[8] "California's Government Claims Act requires that a tort claim against a [state] public entity or its employees for money or damages be presented to the [Department of General Services] no more than six months after the cause of action accrues." *Lopez v. Cate*, No. 1:10-cv-01773-AWI, 2015 WL 1293450, at *13 (E.D. Cal. 2015) (citing Cal. Gov't Code §§ 905.2, 910, 911.2, 945.4, 950-950.2). The Department of General Services was formerly known as the Victim Compensation and Government Claims Board. *McCoy v. Torres*, No. 1:19-CV-01023-NONE-JLT PC, 2020 WL 5257842, at *2 (E.D. Cal. Sept. 3, 2020), *report and recommendation adopted*, 2021 WL 111748 (E.D. Cal. Jan. 12, 2021).

claim for relief. *See Iqbal*, 556 U.S. at 678. A prisoner possesses a protected *liberty* interest under the Due Process Clause of the Fourteenth Amendment only "when a change occurs in confinement that imposes an 'atypical and significant hardship ... in relation to the ordinary incidents of prison life.'" *Resnick v. Hayes*, 213 F.3d 443, 448 (9th Cir. 2000) (quoting *Sandin v. Conner*, 515 U.S. 472, 484 (1995) (emphasis added)).[9] But a violation of state administrative regulations, without more, does not give rise to a deprivation of a protected liberty interest. *See Sandin,* 515 U.S. at 481–84. And while Warren does allege Defendants "failed to accurately represent/inform [him] of what had been taken," and did not "properly" itemize the items confiscated from his cell on a cell search receipt, *see* FAC at 15, "[a]n itemized receipt" does not implicate any plausible liberty interest, and "is not required by the Fourteenth Amendment." *See Hawthorne*, 2020 WL 6891819, at *5.

Instead, the level of hardship necessary to show a liberty interest must be determined on a case-by-case basis. *Wilkinson v. Austin*, 545 U.S. 209, 223 (2005) (noting that "[i]n *Sandin*'s wake the Courts of Appeals have not reached consistent conclusions for identifying the baseline from which to measure what is atypical and significant in any particular prison system."). "[T]he touchstone of the inquiry into the

---

[9] This Court is unaware of any published Ninth Circuit decision applying *Sandin* to a prisoner's property confiscation claims, and at least one district court in California has noted it is not clear *Sandin*'s analysis should apply. *See Lopez v. Holler*, No. 18-CV-04387-WHO (PR), 2020 WL 1429748, at *3 (N.D. Cal. Mar. 24, 2020). However, many federal district courts in California, including the Southern District, have assumed the confiscation and/or destruction of an inmate's personal belongings could potentially implicate a Fourteenth Amendment liberty interest under *Sandin*. *See id.* (citing *Martin v. Hurtado*, Case No. 3:07-CV-00598-BTM-RBB, 2008 WL 4145683, at *13 (S.D. Cal. Sept. 3, 2008) (deprivation of television does not pose an "atypical or significant hardship"); *Shallowhorn v. Gonzalez*, No. 1:11-cv-00305-GBC (PC), 2012 WL 1551342 at *5–6 (E.D. Cal. Apr. 30, 2012) (temporary deprivation of property does not pose an atypical and significant hardship when compared to the ordinary incidents of prison life); *Eaves v. Castro*, No. 1:09-cv-01647-GBC PC, 2011 WL 220017 at *3 (E.D. Cal. Jan. 24, 2011) (deprivation of property does not pose an atypical and significant hardship); *Vogelsang v. Tilton*, No. CIV S-06-2083 JAM DAD P, 2008 WL 4891213 at *4 (E.D. Cal. Nov. 12, 2008) (restriction on number of appliances a prison could keep in his cell did not impose an atypical or significant hardship); *Owens v. Ayers*, No. C 01-3720 SI (PR), 2002 WL 73226 at *2 (N.D. Cal. Jan. 15, 2002) (three-month deprivation of property does not impose an atypical and significant hardship)).

existence of a protected, state-created liberty interest in avoiding restrictive conditions of confinement is not the language of regulations regarding those conditions, but [rather] the nature of those conditions themselves 'in relation to the ordinary incidents of prison life.'" *Id.*, *quoting Sandin*, 515 U.S. at 484.

California Code of Regulations provide that "[a]n inmate's right to inherit, own, sell or convey real and/or personal property does *not* include the right to *possess* such property within the institutions/facilities of the department." Cal. Code Regs., tit. 15 § 3192 (emphasis added). Thus, the deprivation of Warren's books, manuscripts, and other property, while "unique" and meaningful to him, *see* FAC at 12–14, is neither "atypical" nor a "significant hardship" in relation to the "ordinary incidents" of prison life in California because property restrictions and the confiscation of items classified as contraband are deprivations shared by *all* persons incarcerated in the State. *See Sandin,* 515 U.S. at 484; *Blakely v. Jones*, 816 F. App'x 161–162 (9th Cir. 2020) (affirming dismissal of property confiscation claims because the "sanction imposed neither extend[ed] the length of … sentence nor impose[d] an 'atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life.'" (citation omitted); *Lisle v. McDaniels*, 681 F. App'x 611, 613 (9th Cir. 2017) (finding prisoner sentenced to death suffered no "atypical and significant hardship" with respect to his placement in the Condemned Men's Unit (CMU) "[b]ecause all prisoners sentenced to death are housed in the CMU[.]") (citing *Sandin*, 515 U.S. at 484).

For all these reasons, the Court finds Warren's FAC fails to allege any plausible claim for relief under either the First or the Fourteenth Amendment, and concludes his federal constitutional claims against all Defendants remain subject to dismissal pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii) and § 1915A(b)(1).

### 4. Supplemental State Law Tort Claims

Finally, because Warren does not state a cognizable violation of any constitutional right, the Court will decline to exercise supplement jurisdiction as to the state law claims alleged in his FAC pursuant to 28 U.S.C. § 1367(c)(3). *See e.g., California Dep't of*

*Water Res. v. Powerex Corp.,* 533 F.3d 1087, 1091 (9th Cir. 2008) ("Because the Amended Complaint did not present a federal question, the district court ha[s] the discretion to decline supplemental jurisdiction." (citing 28 U.S.C. § 1367(c)(3)).

Pursuant to 28 U.S.C. § 1367(a), "in any civil action in which the district courts have original jurisdiction, the district courts shall have supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution." 28 U.S.C. § 1367(a). A state law claim is part of the same case or controversy when it shares a "common nucleus of operative fact" with the federal claims and the state and federal claims would normally be tried together. *Trs. of the Constr. Indus. & Laborers Health & Welfare Trust v. Desert Valley Landscape Maint., Inc.*, 333 F.3d 923, 925 (9th Cir. 2003) (internal quotations and citations omitted). Here, Warren's state law intentional infliction of emotional distress, breach of contract, breach of fiduciary duty, and breach of the covenant of good faith and fair dealing claims arising from the March 5, 2018 confiscation of his property are based on the same "common nucleus of operative facts" as his First and Fourteenth Amendment claims. *See* 28 U.S.C. § 1367(a).

"The district court may decline to exercise supplemental jurisdiction," however, if it "has dismissed all claims over which it has original jurisdiction." 28 U.S.C. § 1367(c)(3). The Supreme Court has cautioned that "if the federal claims are dismissed before trial, ... the state claims should be dismissed as well." *United Mine Workers of Am. v. Gibbs*, 383 U.S. 715, 726 (1966); *see also King v. Lemos, et al.*, No. 1:20-CV-01837-NONE-BAM PC, 2021 WL 2038187, at *4 (E.D. Cal. May 21, 2021) (declining to exercise supplemental jurisdiction over prisoner's state law breach of contract claims related to lost property pursuant to § 1367(c) where prisoner failed to state a cognizable claim for relief under federal law).

///

///

1  Thus, because the Court has found none of the allegations in Warren's FAC are

2  sufficient to state a plausible First or Fourteenth Amendment claim for relief, it declines

3  to exercise supplemental jurisdiction over all his state law claims pursuant to 28 U.S.C.

4  § 1367(c)(3). "If a district court declines to exercise jurisdiction over a claim asserted

5  under § 1367(a) and the plaintiff wishes to continue pursuing it, []he must refile the claim

6  in state court." *Artis v. D.C.*, __ U.S. __, 138 S. Ct. 594, 599 (2018).

7  ### E.    Leave to Amend

8  On July 6, 2020, the Court explained Warren's pleading deficiencies, and because

9  it was not absolutely clear he could not allege additional facts to state a plausible claim

10  for relief, granted him leave to amend. *Aktar v. Mesa*, 698 F.3d 1202, 1212 (9th Cir.

11  2012) (citing *Ferdik v. Bonzelet*, 963 F.2d 1258, 1261 (9th Cir. 1992)). Despite having

12  had this opportunity, Warren still fails to state either a viable First or Fourteenth

13  Amendment claim against any Defendant. Therefore, the Court finds further amendment

14  would be futile. *See Gonzalez v. Planned Parenthood*, 759, F.3d 1112, 1116 (9th Cir.

15  2014) ("'Futility of amendment can, by itself, justify the denial of ... leave to amend.'")

16  (quoting *Bonin v. Calderon*, 59 F.3d 815, 845 (9th Cir. 1995)); *Zucco Partners, LLC v.*

17  *Digimarc Corp.*, 552 F.3d 981, 1007 (9th Cir. 2009) ("[W]here the plaintiff has

18  previously been granted leave to amend and has subsequently failed to add the requisite

19  particularity to its claims, [t]he district court's discretion to deny leave to amend is

20  particularly broad." (internal quotation marks omitted) (second alteration in original)).

21  ///

22  ///

23  ///

24  ///

25  ///

26  ///

27  ///

28  ///

**IV.    Conclusion and Orders**

Accordingly, the Court:

1.      **DENIES** Plaintiff's Motion to Appoint Counsel [ECF No. 14];

2.      **DISMISSES** this civil action *sua sponte* without further leave to amend for failure to state a claim upon which § 1983 relief can be granted pursuant to 28 U.S.C. § 1915(e)(2)(B) and § 1915A(b)(1);

3.       **CERTIFIES** that an IFP appeal would not be taken in good faith pursuant to 28 U.S.C. § 1915(a)(3); and

4.      **DIRECTS** the Clerk of Court to enter a final judgment of dismissal and to close the file.

**IT IS SO ORDERED.**

Dated:  August 9, 2021

Hon. John A. Houston
United States District Judge

3:20-cv-00405-JAH-JLB